899 F.2d 15
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alejandro LOPEZ, Defendant-Appellant.
 No. 89-5863.
 United States Court of Appeals, Sixth Circuit.
 March 27, 1990.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges and LAWRENCE P. ZATKOFF,* District Judge.
 PER CURIAM:
 
 
 1
 Appellant Lopez challenges the finding of the district court that drug agents had probable cause sufficient to arrest him without a warrant. In addition, appellant challenges the district court's order holding that his rights under the Speedy Trial Act were not violated. Based upon the district court's findings, appellant entered a conditional guilty plea. Because we find both of the claims asserted to be without merit, we affirm the judgment of the district court.
 
 
 2
 Alejandro Lopez and codefendants were arrested and charged with conspiracy (21 U.S.C. Sec. 846), possession of 1,000 grams of cocaine with intent to distribute (21 U.S.C. Sec. 841(a)(1)), travel in interstate commerce to facilitate the offense (18 U.S.C. Sec. 1952(a)(3)), and use of a telephone to facilitate the offense (21 U.S.C. Sec. 843(b)). Lopez asserts that drug agents did not have probable cause for a warrantless arrest of himself and codefendant Wichman in Cincinnati.
 
 
 3
 Government agents believed, based on investigation and information, that Arthur Fogarty was involved in drug trafficking, and lived in or around Marina Del Rey, California. Fogarty had reservations to fly from Los Angeles to Cincinnati on September 3, 1988, with a return flight the very next day. Based on recorded phone calls between Fogarty and a confidential informant, the agents had reason to believe that Fogarty was coming to Cincinnati to complete a drug deal, and that the drugs would be carried by a person or persons other than Fogarty himself. Lopez and Wichman did not book their flights at the same time or place as Fogarty did, but they did book the flights together through a travel agent in Marina Del Rey, Fogarty's home town. Their reservations were for the same flights to and from Cincinnati as Fogarty's. Lopez and his companion, moreover, were the only passengers on Fogarty's Los Angeles-Cincinnati flight who were also returning on the same flight as Fogarty. Lopez and Wichman sat with each other but not with Fogarty on the flight.[1]
 
 
 4
 When the passengers deplaned in Cincinnati, Fogarty walked ahead of Lopez and Wichman, and at this point there were no communications between Fogarty and the other two men. Upon his arrival at the baggage claim area, Fogarty made phone calls. Between phone calls, agents observed Fogarty talk with Lopez and Wichman for the first time. The three men left the baggage claim area together without retrieving any luggage, and boarded a shuttle for the Radisson Hotel located near the airport.
 
 
 5
 At the hotel, the three men all went to the room that Fogarty obtained. Later, Lopez and Wichman returned to the front desk and registered for their own room. At one point, Fogarty left Lopez and Wichman alone in his room, and returned to the airport to call the confidential informant. In this phone call, Fogarty made plans to meet the informant to consummate the transaction. Fogarty made it clear that he was not carrying the drugs himself. After making plans to meet the informant, Fogarty again joined Lopez and Wichman in Fogarty's hotel room. Drug agents surveilling in an adjoining hotel room heard the words, "Big Time" as Fogarty entered the room, and this was a nickname he used.
 
 
 6
 When Fogarty met the informant at the airport, he began to pat down the informant to check for a recording device. Fogarty was then arrested. Lopez and Wichman, apparently unaware of the arrest, went to the lobby of the hotel, and asked the desk clerk (who was an undercover agent) for restaurant suggestions. After dining, they took a taxi to downtown Cincinnati, where they were arrested, and found to be carrying one pound of cocaine each.
 
 1. Probable Cause to Arrest Lopez
 
 7
 The applicable legal standard to be applied here was described in United States v. Sangineto-Miranda, 859 F.2d 1501 (6th Cir.1988):
 
 
 8
 A warrantless arrest is justified if, at the time of the defendant's arrest, police officers have probable cause to believe that an offense has been, is being, or will be committed. Beck v. Ohio, [379 U.S. 89, 91] (1964). Probable cause exists where the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, [443 U.S. 31, 37] (1979) (and cases cited therein).
 
 
 9
 859 F.2d at 1508.
 
 
 10
 In assessing the existence of probable cause, the district court must look to the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-31 (1983); Sangineto-Miranda, 859 F.2d at 1508. A district court's finding that probable cause existed is reviewed under the "clearly erroneous' standard. Sangineto-Miranda, 859 F.2d at 1508; United States v. Pepple, 707 F.2d 261, 263 (6th Cir.1983).
 
 
 11
 The district court adopted the recommendation of the magistrate in finding that probable cause did exist at the time of the arrest. This conclusion is supported in the magistrate's report, and we find it not to be clearly erroneous. By checking in the hotel together after a conversation at the airport and going to the same room, Lopez and Wichman indicated to a reasonable and objective observer a connection with Fogarty, who returned to the airport to set up the drug transaction. This circumstance, combined with strong indications that Fogarty had arranged to have a third person or persons carry the drugs involved, shows abundant basis for a prudent person to believe that Lopez and Wichman were the couriers.
 
 
 12
 Appellant is correct in asserting that "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Ybarra v. Illinois, 444 U.S. 85, 91 (1979). Here, however, there was much more than mere propinquity or even mere association. Ybarra, is distinguishable clearly from the circumstances in this case. The agents in this case had reason to believe that Fogarty was using others to carry his drugs, and the evidence summarized, viewed in its totality, gave the agents probable cause to believe that Lopez and Wichman had committed, were committing, or were involved in drug-related criminal activity. The arrest and search were supported by probable cause.
 
 2. Speedy Trial Rights
 
 13
 The Speedy Trial Act, 18 U.S.C. Secs. 3161 et seq., "requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." Henderson v. United States, 476 U.S. 321, 326 (1986).
 
 Periods excludable include:
 
 14
 delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion ...
 
 
 15
 18 U.S.C. Sec. 3161(h)(1)(F). Also excludable is:
 
 
 16
 delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.
 
 
 17
 18 U.S.C. Sec. 3161(h)(1)(J).
 
 
 18
 Lopez asserts that the Act was violated because the magistrate unreasonably delayed trial by unnecessarily requiring supplemental memoranda on appellant's motion to suppress. The government argues that the period of time taken by the magistrate on the motion was properly excluded, and that in any event, the trial was still scheduled within the applicable time limits. We conclude that the period of time taken by the magistrate was properly excluded, and that appellant's Speedy Trial claim must fail.
 
 
 19
 On October 11, 1988, Lopez filed a motion to suppress the cocaine seized at the time of his arrest. A suppression hearing was had before a magistrate on November 7, 1988. On the date of the hearing, the magistrate ordered that a transcript of the hearing be prepared. He also ordered additional memoranda from the defendant within 10 days following the preparation of the transcript, after which the government would have time to respond. The transcript was filed on December 13, 1988. Between December 16, 1988, and January 10, 1989, Lopez, Wichman, and the government filed assorted memoranda regarding the motion to suppress. The magistrate issued his recommendation that the motion to suppress be denied on February 24, 1989.
 
 
 20
 In Henderson, the Supreme Court addressed the issue of whether section 3161(h)(1)(F) excludes time after a hearing but before the court receives all submissions it needs to decide a motion:
 
 
 21
 Although the language of subsection (F) is not clear on this point, we are convinced that its structure, as well as reason, requires that such time be excluded.
 
 
 22
 The provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion.... District courts often find it impossible to resolve motions on which hearings have been held until the parties have submitted posthearing briefs or additional factual materials, especially where the motion presents complicated issues. It would not have been sensible for Congress to exclude automatically all the time prior to the hearing on a motion and 30 days after the motion is taken under advisement, but not the time during which the court remains unable to rule because it is awaiting the submission by counsel of additional materials.... We therefore hold that subsection (F) excludes time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion.
 
 
 23
 476 U.S. at 331.
 
 
 24
 Appellant argues that the issue to be decided in the suppression hearing, namely the existence or non-existence of probable cause, was not so complicated as to require extra submissions, and that the magistrate took an unreasonable time to make his ruling. It is somewhat disingenuous for this appellant, who spends 20 pages in his brief trying to convince this court that both the magistrate and the district court reached an erroneous decision on the issue of probable cause, to argue that the issue was too simple to require additional filings, and should have been decided immediately. The magistrate's written recommendation provides ample evidence that the magistrate painstakingly analyzed the relevant facts and legal precedent, all in an effort to ensure that this defendant's constitutional rights were not violated. The district court concluded that "every step the Magistrate took was reasonably necessary and that it was reasonable to require the additional briefs." We find no error and conclude that appellant's Speedy Trial claim is also without merit.
 
 
 25
 We accordingly AFFIRM the judgment of the district court.
 
 
 
 *
 THE HONORABLE LAWRENCE P. ZATKOFF, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Lopez traveled under the name of Smith